[Cite as *State v. Jordan*, 2010-Ohio-3456.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 CO 31 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| CHANCELOR JORDAN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                              Court, Case No. 07 CR 319.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Robert L. Herron
                              Prosecuting Attorney
                              Attorney John Gamble
                              Asst. Prosecuting Attorney
                              105 S. Market Street
                              Lisbon, OH  44432


For Defendant-Appellant:      Attorney Scott Essad
                              5815 Market Street, Suite 1
                              Youngstown, OH  44512



JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


                              Dated:  July 8, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Chancelor A. Jordan, appeals the September 3, 2009 decision of the Columbiana County Court of Common Pleas that convicted him of one count of drug trafficking and three counts of drug possession and sentenced him accordingly. On appeal, Jordan argues that the imposition of maximum, consecutive sentences by the trial court was erroneous. Upon review, Jordan's arguments are meritless. The sentence chosen was not clearly and convincingly contrary to law or an abuse of discretion. Accordingly, we affirm the judgment of the trial court.

### Facts and Procedural History

{¶2} On October 26, 2007, a Columbiana County grand jury secretly indicted Jordan on six counts: (1) possession of cocaine, in violation of R.C. 2925.11(A), a fifth-degree felony; (2) trafficking in cocaine, a violation of R.C. 2925.03(A)(1), a fifth-degree felony; (3) possession of crack cocaine where the amount involved equals or exceeds 25 grams but is less than 100 grams, in violation of R.C. 2925.11(A), a first-degree felony; (4) possession of cocaine where the amount involved equals or exceeds 25 grams but is less than 100 grams, in violation of R.C. 2925.11(A), a third-degree felony; (5) possession of methamphetamine or methylendioxymethamphetamine (MDMA) in violation of R.C. 2925.11(A), a fifth-degree felony; and (6) possession of heroin where the amount involved exceeds 10 unit doses but is less than 50 unit doses, in violation of R.C. 2929.11(A), a fourth-degree felony. Attached to Counts Three, Four and Five was a forfeiture specification for $610 and a set of digital scales. These charges stemmed from several incidents that occurred between 2003 and 2007.

{¶3} Jordan was arraigned, pled not guilty to the counts in the indictment and counsel was appointed. Upon Jordan's request, the State filed a bill of particulars. Subsequently, Jordan reached a Crim.R. 11 agreement with the State, whereby he agreed to plead guilty to Counts One, Two, Five and Six, and in exchange the State agreed to dismiss Counts Three and Four. The written plea agreement indicated that at the time of sentencing, the State would recommend maximum consecutive sentences

and oppose community control sanctions.

{¶4} The court provided written information to Jordan regarding the charges he faced, the maximum penalties and the effect of a guilty plea. Jordan filed a written response to that document. During a hearing held on September 2, 2009, the trial court engaged in a Crim.R. 11 plea colloquy with Jordan, after which the court accepted Jordan's guilty plea as knowing, voluntary and intelligent.

{¶5} Per Jordan's request, the trial court proceeded immediately to sentencing. The prosecutor advocated Jordan receive maximum, consecutive sentences. Defense counsel argued for a more lenient sentence and made a statement in mitigation of sentencing. Jordan himself made a statement in mitigation of sentencing.

{¶6} The trial court ultimately pronounced the following sentence:

{¶7} "[I]n relation to the specification of count -- attached to count five; the six hundred and ten dollars is ordered forfeited. The digital scales is [sic] ordered forfeited to the State of Ohio, to be disposed of as provided by law.

{¶8} "In relation to count's one, two, and five of the indictment the Defendant is sentenced to twelve months of [sic] each of those counts. On count six, the Defendant is sentenced to eighteen months on that count. Those are ordered served consecutive with each other."

{¶9} The court also gave Jordan credit for time served, and ordered Jordan's driver's license suspended on each of the counts for a period of six months, to be served concurrently. The court notified Jordan about a three-year period of discretionary post-release control following his release from prison. The sentencing decision was memorialized in a September 3, 2009 judgment entry.

## Sentencing

{¶10} In his sole assignment of error, Jordan asserts:

{¶11} "The trial court's sentencing of Appellant Chancelor A. Jordan was clearly and convincingly contrary to law as well as an abuse of discretion."

{¶12} When reviewing a felony sentence, an appellate court first examines the sentence to ensure the sentencing court clearly and convincingly complied with the

applicable laws. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶4. A sentence is clearly and convincingly contrary to law when the sentencing court does not comply with all applicable rules and statutes in imposing the sentence. *State v. Gratz,* 7th Dist. No. 08-MA-101, 2009-Ohio-695, at ¶8, citing *Kalish* at ¶13-14. If this inquiry is satisfied, an appellate court then reviews the trial court's sentencing decision for abuse of discretion. *Kalish* at ¶17, 19-20. An abuse of discretion means more than an error of law or judgment; but rather implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Thus, in the felony sentencing context, "[a]n abuse of discretion can be found if the sentencing court unreasonably or arbitrarily weighs the factors in R.C. 2929.11 and R.C. 2929.12." *State v. Heverly,* 7th Dist. No. 09 CO 4, 2010-Ohio-1005, at ¶34.

{¶13} Initially, the State argues that Jordan has forfeited all challenges to his sentence because he failed to object at the time of sentencing. The State cites *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, in support of this argument. However, *Payne* involved the narrow issue of forfeiture of an alleged *Blakely* error on appeal where the defendant failed to object to his sentence on such grounds at a sentencing proceeding that occurred after the announcement of *Blakely. Payne* at ¶21 (concerning alleged errors pursuant to *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403). This is not the issue here, therefore *Payne* does not apply. Thus, we review Jordan's sentence under the analysis set forth in *Kalish.*

{¶14} Turning to the first prong of the inquiry, we must determine whether the sentence is clearly and convincingly contrary to law. Jordan was convicted of three fifth-degree felonies and one fourth-degree felony. Fifth degree felonies carry potential prison terms ranging from six to twelve months. R.C. 2929.14(A)(5). Fourth degree felonies carry potential prison terms ranging from six to eighteen months. R.C. 2929.14(A)(4). Thus, the trial court could have sentenced Jordan to a term ranging from six months to four and a half years. The court chose four and a half years, which is within the sentencing range. The trial court properly notified Jordan of post-release control pursuant

to R.C. 2967.28.  Further, the trial court afforded Jordan his allocution rights pursuant to Crim.R. 32(A)(1).

{¶15}  Jordan presents two specific arguments as to why his sentence is contrary to law, the first of which relates to the trial court's failure to make findings before imposing consecutive sentences pursuant to R.C. 2929.14(E)(4).  Jordan acknowledges that *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 held R.C. 2929.12(E)(4) unconstitutional.  However, Jordan asserts that a recent United States Supreme Court decision, *Oregon v. Ice* (2009), --- U.S. ---,129 S.Ct. 711, 172 L.Ed.2d 517, abrogates that portion of *Foster.*[1]

{¶16}  Jordan misconstrues the effect *Ice* has on *Foster.*  The Ohio Supreme Court excised the unconstitutional provisions requiring judicial fact-finding from the sentencing statutes, including R.C. 2929.14(E)(4) and R.C. 2929.41(A).  Id at ¶97. As a result, the Court ultimately held that, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."  Id. at paragraph seven of the syllabus.

{¶17}  In *Ice*, the United States Supreme Court examined an Oregon statute that required judges to find certain facts before imposing consecutive rather than concurrent sentences.  Id. at 714-20.  The Supreme Court upheld the constitutionality of the Oregon statute and held it did not violate the Sixth Amendment concerns at issue in *Apprendi* and *Blakely*.  Id. at 719. The Court concluded that, in light of historical practices and the right of states to administer their criminal justice systems, the Sixth Amendment did not prevent states from allowing judges to make any finding of facts necessary to impose consecutive, rather than concurrent, sentences.  Id. at 716-20.

{¶18}  Subsequent to *Ice*, the defendant in *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, argued that because *Foster* excised R.C. 2929.14(E)(4) and 2929.41(A), there was neither a statutory nor a constitutional basis to

---

[1] The Ohio Supreme Court has accepted jurisdiction to decide this exact issue and that case is currently pending before the court.  *State v. Hodge,* Case No. 2009-1997.

permit the imposition of consecutive sentences. The Ohio Supreme Court declined the state's post oral argument attempt to argue *Ice* and rejected Elmore's assigned error relying exclusively on prior Ohio precedent:

{¶19} "We addressed this issue in *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328. In *Bates*, we considered whether a trial court has the authority after *Foster* to order a prison sentence that it imposes to be served consecutively to a prison sentence already imposed by another Ohio court. Id. at ¶11. We stated that before *Foster*, R.C. 2929.14(E)(4) and 2929.41(A) did not permit a trial court to order a prison sentence to be served consecutively to a prison sentence previously imposed on the offender by a different court. Id. at ¶14. However, *Foster* severed and excised R.C. 2929.14(E)(4) and 2929.41(A) in their entirety. Thereafter, no statute remained to establish presumptions for concurrent and consecutive sentences. Id. at ¶18.

{¶20} "We held in *Bates* that in the absence of statutory authority, 'the common-law presumptions are reinstated.' *Bates* at ¶18, citing 73 American Jurisprudence 2d (2007), Statutes, Section 271 (the repeal of a statute that abrogates the common law operates to reinstate the common-law rule). We also stated that ' "in the absence of [a] statute [stating otherwise], it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently." ' Id. at ¶13, quoting *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181, 22 O.O.2d 116, 187 N.E.2d 888. See also *State ex rel. Stratton v. Maxwell* (1963), 175 Ohio St. 65, 67, 23 O.O.2d 357, 191 N.E.2d 549. ('It is clear that a court has the power to impose consecutive sentences'); *Henderson v. James* (1895), 52 Ohio St. 242, 254-255, 39 N.E. 805 ('this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences without the aid of a statute'). In *Bates*, we held that after *Foster*, a 'trial court now has the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently.' *Bates* at ¶19.

{¶21} "Since *Foster* was decided, the United States Supreme Court has announced *Oregon v. Ice* (2009), --- U.S. ----, 129 S.Ct. 711, 714, 172 L.Ed.2d 517, a case that held that a jury determination of facts to impose consecutive rather than

concurrent sentences was not necessary if the defendant was convicted of multiple offenses, each involving discrete sentencing prescriptions. The jury historically played no role in a decision to impose sentences consecutively or concurrently. The choice rested exclusively with the judge, and thus the Oregon statutes did not erode any traditional function of the jury. Further, the state had sovereign authority over the administration of its criminal justice system, and there was no compelling reason to diminish the state's role by curbing the state's limitation on the discretion of judges in imposing consecutive or concurrent sentences.

**{¶22}** "*Foster* did not prevent the trial court from imposing consecutive sentences; it merely took away a judge's duty to make findings before doing so. The trial court thus had authority to impose consecutive sentences on Elmore." *Elmore* at ¶32-35. Thus, the Ohio Supreme Court stopped just short of considering *Foster* in light of *Ice*.[2]

**{¶23}** Most appellate districts when faced with this issue have decided that *Foster* is still good law that appellate courts must follow unless and until the Ohio Supreme Court directly overrules it. See, e.g., *State v. Dunaway*, 12th Dist. Nos. CA2009-05-141, CA2009-06-164, 2010-Ohio-2304, at ¶89-90; *State v. Finn*, 6th Dist. Nos. L-09-1162, L-09-1163, 2010-Ohio-2004, at ¶10; *State v. Sabo*, 3d Dist. No. 14-09-33, 2010-Ohio-1261, at ¶34-42; *State v. Potter*, 10th Dist. No. 09AP-580, 2010-Ohio-372, at ¶7-8; *State v. Moncoveish*, 11th Dist. No. 2008-P-0075, 2009-Ohio-6227, at ¶21; *State v. Robinson*, 8th Dist. No. 92050, 2009-Ohio-3379, at ¶27-29; *State v. Starett*, 4th Dist. No. 07CA30, 2009-Ohio-744, at ¶35.

**{¶24}** But in *State v. Vandriest*, 5th Dist. No. 09-COA-032, 2010-Ohio-997, the Fifth District held that because the appellant was sentenced after *Ice* and after the Ohio legislature "amended" R.C. 2929.14 that the trial court was required to make statutory findings pursuant to R.C. 2929.14(E)(4) before imposing consecutive sentences on appellant.Id. at ¶9.

**{¶25}** We conclude that, pursuant to *Ice* and *Elmore*, Ohio's post-*Foster*

---

[2]"We will not address fully all ramifications of *Oregon v. Ice*, since neither party sought the opportunity to brief this issue before oral argument." *Elmore* at ¶*35.*

sentencing scheme, which gives a sentencing court the discretion to impose consecutive sentences without making findings, passes constitutional muster. *Ice* at 714-715 (noting that it is "undisputed" that states do not violate the Sixth Amendment by continuing the common law tradition of entrusting to judges' unfettered discretion the decision whether sentences shall be served consecutively or concurrently). *Elmore* at ¶33 (in the absence of statutory authority, common law presumptions are reinstated and the imposition of consecutive sentences is within the inherent authority of the court). As such, the trial court in this case did not err by failing to make findings pursuant to R.C. 2929.14(E)(4). Jordan's argument to the contrary is meritless.

**{¶26}** Second, Jordan contends that his sentence was clearly and convincingly contrary to law because the trial court failed to consider the overriding purposes of felony sentencing contained in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12. He argues that the record is silent in this case. However, this is not accurate since the trial court did state it had considered R.C. 2929.11 and 2929.12 in the sentencing entry. Further, even if the record had been completely silent, this court has held that reversal is not automatic. *State v. Ballard*, 7th Dist. No. 08 CO 13, 2009-Ohio-5472, at ¶71; *State v. James*, 7th Dist. No. 07 CO 47, 2009-Ohio-4392, at ¶50. Rather, a silent record creates a presumption that the trial court considered the factors. *James* at ¶50. This presumption may be rebutted by affirmatively showing the trial court failed to consider the proper factors or that the sentence is strikingly inconsistent with them, which is not the case here. Id. Based on the foregoing, Jordan's sentence is not clearly and convincingly contrary to law.

**{¶27}** Thus, we move to the second prong of the analysis which is whether the chosen sentence was an abuse of discretion. As an initial matter, the trial court may consider a wealth of information when sentencing the defendant, including but not limited to: the trial transcript, the defendant's prior arrests, crimes for which the defendant was acquitted, and otherwise inadmissible evidence including information that was suppressed prior to trial. *Ballard* at ¶80-81. Further, although R.C. 2929.12 lists many specific factors a trial court must consider, the court also has the discretion to consider

factors not specifically listed in the statute. See R.C. 2929.12(B).

{¶28} Regarding the seriousness of Jordan's crime, there is evidence upon which the trial court could have reasonably relied to conclude the crime was more serious. Jordan was involved in numerous drug-related crimes that took place over a period of years. The prosecutor alleged during sentencing that Jordan was "at the top of the food chain" in terms of the illegal drug trade in Columbiana County. The prosecutor indicated that when Jordan was arrested for a federal warrant he was found in the center of Lisbon with six bags of cocaine in his pocket. The prosecutor showed a video of an informant purchasing drugs from Jordan, and pointed out the overwhelming evidence of significant drug trafficking activity at the residence. Further, the prosecutor noted that several young children were in an adjoining room when the drug activity took place. These considerations would tend to make the crime more serious. R.C. 2929.12(B). There is nothing in the record indicating the crime was less serious pursuant to R.C. 2929.12(C).

{¶29} With regard to the likelihood of recidivism, see R.C. 2929.12(D) and (E), there is no PSI in this case for us to examine, however this is due to Jordan's request to proceed immediately to sentencing, and his indication that he would not request that the court consider a community control sanction. Looking at the information that emerged about Jordan's past at the sentencing hearing, the trial court could have reasonably concluded recidivism was more likely. From the sentencing hearing it was adduced that Jordan had been convicted of and served time for a federal drug charge in 2003. The prosecutor also indicated that Jordan had several convictions in the Cuyahoga County Court of Common Pleas in 2003, including failure to comply with the signal of a police officer; breaking and entering; possession of drugs; possession of criminal tools; tampering with evidence; and trafficking in drugs. The prosecutor also indicated that Jordan was charged and arrested in Cuyahoga County in May 2007 for receiving stolen property. The prosecutor also alleged that Jordan had a history of criminal behavior since he was a juvenile. Defense counsel did not exactly dispute that last allegation, rather responding that the discovery packet provided by the prosecutor did not include any crimes prior to 2003.

{¶30} Jordan did apologize for his crimes during sentencing therefore demonstrating some remorse which could tend to show recidivism is less likely. R.C. 2929.12(E)(5). However, the apology seems somewhat disingenuous considering Jordan's earlier comments where he seemed to indicate that the State's failure to indict him earlier contributed to his continued drug trafficking:

{¶31} "MR JORDAN: I would like, uh, I would like to say, 'Yes, I did sell drugs, and I went to jail.' And all this from 2003, I believe I was eighteen or nineteen.

{¶32} "And I did, I sold drugs, I went to jail for it, and in this case, I guess I got the possession from '03, and I was never charged, it's not like I was charged and then I came and I just kept catching cases.

{¶33} "It's just, they -- I had cocaine in my pocket, I was not indicted-- all this is coming four years later, it's like they saved it. You know what I'm saying? Maybe if I was indicted, maybe if -- you know what I'm saying? Maybe I wouldn't have continued to sell drugs. You know what I'm saying? It's like they just saved it up."

{¶34} These remarks would seem to indicate Jordan's failure to accept full responsibility for his actions. Thus, on the whole, the trial court could have reasonably concluded recidivism was more likely. For these reasons, the trial court did not abuse its discretion in sentencing Jordan.

{¶35} In conclusion, Jordan's sole assignment of error is meritless. Jordan's sentence was not clearly and convincingly contrary to law or an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs in judgment only.